■ STEYR-DAIMLER-PUCH AG. et al., Appellants, v ALLSTATE INSURANCE COMPANY, Respondent.—Mikoll, J. Appeals (1) from an order of the Supreme Court (Viscardi, J.), entered June 10, 1988 in Clinton County, which, inter alia, granted defendant's motion for summary judgment dismissing the complaint, and (2) from the amended judgment entered thereon.

---

Plaintiffs sought a declaratory judgment as to the rights and legal obligations of the parties under two completed operations and products liability insurance policies issued to plaintiffs, one by defendant, the successor to Northbrook Excess and Surplus Insurance Company, and the other by Ideal Mutual Insurance Company (hereinafter Ideal). This suit evolves from a dispute as to the extent of coverage that defendant owes to plaintiffs as a result of an injury sustained by Patricia Burke on July 7, 1981 while using a product manufactured and/or distributed by plaintiffs. Burke's personal injury action was ultimately settled for $1,250,000. Before the settlement, Ideal filed for bankruptcy and has been liquidated. Plaintiffs seek to have defendant cover the entire settlement contending that defendant's insurance policy and Ideal's insurance policy formed a single tier of excess coverage, affording plaintiffs coverage in the amount of $10,000,000, in excess of plaintiffs' self-insured retention. In its answer, defendant set forth a counterclaim contending that it provided plaintiffs with an excess policy only and, therefore, its liability commences only after the first $1,000,000 is paid under Ideal's underlying policy coverage. Defendant claims that plaintiffs are obligated to pay it $350,050.01, plus interest from the date of the settlement agreement.

Defendant then moved for summary judgment dismissing the complaint and for judgment on its counterclaim. Plaintiffs opposed the motion and cross-moved for summary judgment granting them the declaratory relief set forth in the complaint. Supreme Court granted defendant's motion, declaring that defendant was obligated to pay only sums in excess of $1,000,000 in the Burke action, and awarded defendant judgment on its counterclaim. This appeal by plaintiffs ensued.

Parties to an insurance contract may allocate risks in any manner they choose absent a violation of public policy, statute or constitutional provision. When the terms of a policy are clear, courts will not engage in strained interpretations to find coverage (*Bretton v Mutual of Omaha Ins. Co.*, 110 AD2d 46, *affd* 66 NY2d 1020; *Holzberg v Mutual Life Ins. Co.*, 104 AD2d 972, *lv denied* 68 NY2d 604). Excess or umbrella policies do not contribute to a loss until the limits of the underlying primary policy have been reached (*State Farm Fire & Cas. Co. v LiMauro*, 65 NY2d 369). An excess carrier is not required to assume the responsibility of a primary carrier who has become insolvent where the language of the excess policy is clear and unambiguous (*Pergament Distribs. v Old Republic Ins. Co.*, 128 AD2d 760, *lv denied* 70 NY2d 607).

There should be an affirmance. The language of the insurance policy between plaintiffs and defendant is clear and unambiguous.* It states that it is an "Excess Liability Coverage" policy under which liability attaches "only in excess of

---

\* The relevant provisions of defendant's policy read as follows:

"I. *Excess Insurance Hereunder.* As respects occurrences taking place during the policy period, [defendant] hereby agrees to afford such additional liability insurance as the issuer of the Underlying Policy specified below would afford by increasing the amount of each Underlying Policy limit listed below to the amount shown opposite such Underlying Policy limit in the Total Limits column; PROVIDED that liability shall attach to [defendant] (a) only in excess of Underlying Policy coverage which is subject to a limit listed below, and (b) only after the issuer of the Underlying Policy had paid or has been held liable to pay the full amount of the applicable limit of the said policy, and (c) only as respects such additional amounts in excess thereof as would be payable by the issuer of the Underlying Policy if the said policy were amended as aforesaid.

| "Coverage(s) in Excess of which the Policy Applies | Applicable Limits of Underlying Policy | Total Limits (Underlying Policy and this Policy Combined) |
|---|---|---|
| "Products Liability | $1,000,000. any one occurrence and in the aggregate (where applicable) excess of $25,000. any one occurrence, $200,000. in the aggregate (where applicable) Self Insured Retention | \* $10,000,000. any one occurrence and in the aggregate (where applicable) excess of $25,000. any one occurrence, $200,000. in the aggregate (where applicable) Self Insured Retention |

"\* NESCO retaining: $9,000,000. excess of $1,000,000. excess of $25,000./$200,000. Self Insured Retention Marsh & McLennan and Ideal Mutual.

"II. *Maintenance of Underlying Insurance.* It is a condition of this policy that the Underlying Policy be maintained in full effect during the period of this policy except for the reduction of any aggregate limit contained therein solely by payment of claims for occurrences which take place during the policy period of this policy. If the Underlying Policy is cancelled prior to the end of the policy period of this policy, as shown in the Declarations hereof, the effective date of cancellation of the said Underlying Policy shall be the end of the policy period of this policy.

"This policy is subject to the same warranties, terms and conditions (except as regards the premium, the obligation to investigation and defend, the amount and limits of liability and the renewal agreement, if any, and except as otherwise provided herein) as are contained in or as may be added to the Underlying Policy prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the Underlying Policy, then the premium hereon shall be adjusted accordingly."

Underlying Policy coverage". Ideal is identified as the underlying coverage insurance carrier. Further, defendant's insurance policy specifically requires maintenance of the Ideal insurance policy as a condition precedent to its own attachment. Of special note is the statement in the insurance policy that limits of the underlying Ideal policy are to be reduced "solely by payment of claims".

We find plaintiffs' reliance on *Donald B. MacNeal, Inc. v Interstate Fire & Cas. Co.* (132 Ill App 3d 564, 477 NE2d 1322) inapposite. The policy's limit of liability provision involved in that contract was found to be ambiguous and the ambiguity was construed against the insurer, affording coverage to the insured. We find no such ambiguity herein.

Order and amended judgment affirmed, with costs. Mahoney, P. J., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.